Robert C. Matz (California State Bar No. 217822)
THE LAW OFFICE OF ROBERT C. MATZ LLP
1151 Harbor Bay Parkway, Suite 112
Alameda, California 94502
Telephone: (510) 865-1150
E-mail: rcmatz@rcmatzlaw.com

Attorney for Plaintiff Jason Heller, an individual and sole proprietor doing business as Floating Lightbulb Toys

FILED
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
11 MAR 31 PM 3: 5[?]
BY:

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON G. HELLER, an individual and sole proprietor doing business as Floating Lightbulb Toys<br><br>Plaintiff,<br><br>v.<br><br>HASBRO, INC., a Rhode Island Corporation;<br><br>Defendant. | CASE NO. CV11 02756 RGK (JEMx)<br><br>JASON G. HELLER'S COMPLAINT FOR:<br><br>1. Breach of Written Contract<br>2. Breach of Confidence<br>3. Trade Secret Misappropriation<br>4. Common Law Misappropriation<br>5. Unjust Enrichment<br><br>AND DEMAND FOR JURY TRIAL |

Plaintiff, Jason G. Heller ("Plaintiff" or "Mr. Heller"), an individual and sole proprietor who, from April 2008 to November 2009, did business as "Floating Lightbulb Toys," and who, during this same time frame, conceived of and subsequently developed a robotic toy hamster and accessories for this toy, by and through his above-referenced counsel of record, hereby complains and alleges as follows, against Defendant Hasbro, Inc.:

///

///

JASON G. HELLER'S COMPLAINT
AGAINST HASBRO, INC.

## THE PARTIES

1. Plaintiff Jason G. Heller is an individual with his principal residence in San Mateo, California. From April 2008 to November of 2009, Mr. Heller was a sole proprietor who did business as "Floating Lightbulb Toys."

2. Upon information and belief, Defendant Hasbro, Inc. ("Hasbro"), is, and at all times mentioned herein was, a Rhode Island Corporation with its principal place of business at 1027 Newport Avenue, Pawtucket, Rhode Island 02861.

3. Upon information and belief, individuals owning, directing, working for, or acting under the direction and control of Hasbro have engaged in intentional, tortious acts against Mr. Heller, and are therefore personally liable for their actions and the damage caused to Mr. Heller. Mr. Heller reserves the right to amend his Complaint to name these persons in their individual capacities.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship) because the amount in controversy exceeds the sum or value of $75,000, exclusive of costs interests and costs, and is between citizens of different states.

5. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

6. This Court has personal jurisdiction over Hasbro because Hasbro has minimum contacts with California such that the exercise of personal jurisdiction over Hasbro by a federal court in California does not offend traditional notions of fair play and substantial justice. Upon information and belief, Hasbro maintains offices in California, entered into a contract with Mr. Heller in California, and has offered for sale, sold, advertised, and distributed a substantial number of toys known as "Furry Frenzies," as well as accessories for these toys, in the state of California. Hasbro is subject to this Court's general personal jurisdiction because Hasbro engages in continuous and systematic general business contacts that approximate physical presence in California by and through the advertisement, sale, and distribution of toys

throughout the state of California and in this judicial district, including the toys known as "Furry Frenzies," and accessories for these toys, which are the subject of this lawsuit. Hasbro is also subject to this Court's specific personal jurisdiction because Hasbro entered into a contract with Mr. Heller, who resided in this judicial district at the time the contract was entered into, and met with Mr. Heller in El Segundo, California, and purposefully directed its activities at Mr. Heller, who resides in the state of California, and because Hasbro purposefully availed itself of the privilege of doing business in California by advertising, selling, and distributing toys and accessories, including "Furry Frenzies" and accessories for this toy, throughout the state of California and in this judicial district, and because the claims asserted herein arise out of the sale of the "Furry Frenzies" product line in the state of California and elsewhere, such that the assertion of personal jurisdiction over Hasbro is reasonable and fair.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a)(2)-(3) and (c) because this is a judicial district in which a substantial part of the property that is the subject of the action is located, a substantial part of the events or omissions giving rise to the claim can be said to have occurred, and because Hasbro is subject to personal jurisdiction at the time this action was commenced, and there is no district in which the action may otherwise be brought.

## BACKGROUND FACTS

8. Jason Heller is an inventor and designer of toys. Among Mr. Heller's accomplishments in the toy industry was acting as the co-inventor/designer of the Amazing Amanda, the top-selling feature doll of 2005. In 2005-2006, Mr. Heller co-invented/designed Amazing Allysen, a follow up to Amazing Amanda. In 2006-2007, Mr. Heller co-invented/designed Amazing Puppy Lexie, an animatronic voice-response dog. Mr. Heller also helped design the basic look for the Snap 'N Style dolls for Fisher Price. During this time, Mr. Heller developed numerous prototypes for toys and pitched ideas to toy companies, spending many months in China at various factories, modeling shops, tool makers, and software houses.

JASON G. HELLER'S COMPLAINT AGAINST HASBRO, INC.

9. In April of 2008, Mr. Heller, a sole proprietor doing business under the name "Floating Lightbulb Toys," conceived of an idea for a robotic, toy hamster with numerous features and accessories. Mr. Heller documented his ideas for this robotic, toy hamster in a document entitled "Hammy! (the Robot Hamster) Specification Brief." ("Toy Hamster Specification Brief"). The Toy Hamster Specification Brief sets forth an abundance of information which constitutes Mr. Heller's protectable trade secrets, including the marketing rationale for the toy, a physical description of the toy and its sounds and interactions, accessories for this toy, the hardware requirements for the toy, the cage configuration for the toy, the physical movements for the toy, and the sounds of the toy. Mr. Heller saved this document on a password-protected computer, which was located on premises which were secure. On the bottom of the Toy Hamster Specification Brief, Mr. Heller noted it contained "Confidential and proprietary information." Anyone viewing this document was put on notice that Mr. Heller considered the information contained in the Toy Hamster Specification Brief to be his confidential and proprietary information.

10. The Toy Hamster Specification Brief describes, *inter alia*, a robotic toy hamster, covered in plush, with a small speaker, voice chip, and memory that would allow the robotic toy hamster to make special noises, such as eating or drinking noises, panting noises, and happy squeaks, the ability to move to various locations in a cage, the ability to move in a clear plastic ball, the ability to move on a makeshift hamster tread wheel, and the ability to move through and use living spaces connected by small, sloping tubes.

11. The Toy Hamster Specification Brief also described a number of hamster-related accessories which could be used for the toy, including hamster carriers, a hamster racetrack where a toy hamster powers a small car, and hamster bedding and litter. These accessories were not mere surplusage; in fact, they were an integral part of Mr. Heller's conception for the robotic toy hamster. Mr. Heller noted in the Toy Hamster Specification Brief that hamsters are often a child's first pet and probably the most accessorized pets on the planet. Mr. Heller

JASON G. HELLER'S COMPLAINT
AGAINST HASBRO, INC.

concluded that this combination of popularity and accessorization make hamsters an ideal candidate for translation to the burgeoning world of toy robotic pets. Mr. Heller was right.

12. After conceiving of the robotic plush toy hamster and documenting his ideas as to the marketing rationale, features, functionalities, and accessories for the toy, Mr. Heller and his agent then approached a number of modeling/toy houses in Hong Kong to develop a prototype of the toy and accessories, including A-Tech Product Engineering Company, Limited ("A-Tech" or "A-Tech/The Bean"), a Hong Kong Limited Liability Company with its principal place of business at Flat 15, 10/F Leader Industrial Centre, 57-59, Au Pui Wan Street, Fo Tan, N.T. Hong Kong, The Bean Project Company Limited ("The Bean" or "A-Tech/The Bean"), a Hong Kong Limited Liability Company with its principal place of business also at 57-59, Au Pui Wan Street, Fo Tan, N.T. Hong Kong, and Ying Leung International Limited ("Ying Leung"), a Hong Kong Limited Liability Company with its principal place of business at Room 514-516, Star House 3 Salisbury Road, Tsimshatsui, Kowloon, Hong Kong. Mr. Heller was familiar with the work of these companies and therefore turned to them for assistance.

13. Before disclosing his trade secrets and non-trade secret confidential and proprietary business information to A-Tech/The Bean, and Ying Leung, Mr. Heller entered into Mutual Non-Disclosure Agreements ("MNDA") with these companies providing that any trade secrets/non-trade secret confidential and proprietary business information disclosed to them would remain his property, and further providing that these companies were prohibited from disclosing this trade secrets/non-trade secret confidential and proprietary business information to any third party, including any other manufacturers or independent contractors, without Mr. Heller's prior written approval. Mr. Heller did not – then or at any time since then – give any entity or individual permission to disclose this trade secrets and non-trade secret confidential and proprietary business information to any third party.

14. After entering into binding MNDAs with A-Tech/The Bean and Ying Leung, Mr. Heller then transmitted his ideas for the toy and accessories to these companies by and through e-mails, telephone calls, face-to-face meetings, and the transmission/exchange of documents,

JASON G. HELLER'S COMPLAINT AGAINST HASBRO, INC.

including the aforementioned Toy Hamster Specification Brief, and requested that each of these companies provide quotations/cost estimates for the construction of two prototypes and accessories for this toy. After reviewing these quotations/cost estimates, Mr. Heller hired A-Tech/The Bean to construct the undercarriage for the hamster, as well as the Exploro-Ball, Tread Wheel, and Spiral Ramp, and he hired Ying Leung to work on the electronics and programming for the toy.

15. After retaining Ying Leung and A-Tech/The Bean to construct two prototypes and accessories, Mr. Heller subsequently transmitted a separate document to these companies entitled "Hammy! (the Robot Hamster) Demo Capability Summary," ("Demonstration/Prototype Brief"), which sets forth a minimum set of features for the prototype/demonstration unit as well as certain accessories for the toy, described as a "self-contained robot hamster[s] with plush exterior" that interacts with "(a) an "Exploro-Ball (a clear sphere), (b) Tread Wheel, and (c) Spiral Ramp," can "play a sound and/or perform a movement," and is able to "react to [a] touch sensor on back" with accompanying "sound and movements." The prototypes were also to include switches allowing Hammy to operate in three distinct modes – a directed movement mode allowing Hammy to use the Exploro-Ball, Tread Wheel, or follow a drawn line, a random movement mode allowing Hammy to move about randomly and occasionally make noises, and a cuddling mode to be used when the toy was being held by the toy's owner. These companies, under Mr. Heller's direction, then used Mr. Heller's trade secrets and non-trade secret confidential and proprietary business information to construct the two prototypes of the robotic toy hamster and accessories.

16. At the same time Mr. Heller was developing his robotic toy hamster, he was also developing other ideas for toys, including an electronic lifestyle device for girls, a vehicle concept for boys, a concept for Play Doh, and flash driven games that could be embedded in toys called "PC Plug N' Play. In August of 2008, Mr. Heller left a voicemail for Mike Hirtle at Hasbro in an attempt to set up a meeting to discuss his ideas for these other toys, and he also sent a follow up e-mail stating that, in addition to these other toys, "[w]e also have an

JASON G. HELLER'S COMPLAINT AGAINST HASBRO, INC.

animatronic pet concept in development which should be ready later this month." This e-mail expressly stated "this e-mail and any attachments contain information that is confidential and proprietary and intended only for the recipients," making it clear to Hasbro that this information was not to be shared with anyone outside of Hasbro. Mr. Hirtle then referred Mr. Heller to David Mauer, Hasbro's head of Inventor Relations and Director of Concept Acquisition. In connection with this introduction, Darlene Horan at Hasbro forwarded to Mr. Heller, via e-mail, what she referred to as Hasbro's "standard disclosure form for reviewing outside ideas," and thereafter a meeting was set up between Mr. Heller and Mr. Mauer in El Segundo, California. On September 17, 2008, in a face-to-face meeting in El Segundo, California, Mr. Heller and Mr. Mauer signed the Agreement to Hold Confidential, a true and correct copy of which is attached hereto as **Exhibit 1**, and thereafter Mr. Heller disclosed his ideas an electronic lifestyle device for girls, a vehicle concept for boys, and a concept for Play Doh. Since neither the Hammy nor PC Plug N' Play prototypes were complete, Mr. Heller could not present those toys to Mr. Maurer at that meeting, although Mr. Maurer indicated that he would be interested in seeing the robotic toy hamster and the PC Plug N' Play once the prototypes were completed.

17. With respect to the completion of the Hammy and PC Plug "N Play prototypes, in September of 2008, Ying Leung shipped two prototypes of the robotic toy hamster – with functioning electronics and computer programming – to A-Tech/The Bean for further work on the plush exterior and compatibility with the Exploro-Ball and Tread Wheel. In October of 2008, these units were returned to Ying Leung for fine tuning of the electronics and programming. On November 2, 2008, Mr. Heller and FLB Toys instructed Ying Leung to ship the completed prototypes and accessories to him in the state of California. The prototype for the PC Plug N' Play product was completed by other toy companies Mr. Heller was working with around the same time. On November 4, 2008, Mr. Heller left Mr. Maurer a voicemail telling him that both the Hammy prototype and PC Plug N' Play prototypes were complete and ready for his review. A meeting was set up between Mr. Heller and Mr. Maurer in El Segundo, Califonria, and on November 12, 2008, Mr. Heller presented the prototypes for the robotic toy

JASON G. HELLER'S COMPLAINT AGAINST HASBRO, INC.

hamster and accessories, and the prototype for the PC Plug N' Play concept, to Mr. Maurer in a face-to-face meeting in El Segundo, California. Mr. Heller also discussed the toys and the marketing rationale for the toys and, upon information and belief, also gave Mr. Maurer copies of the Toy Hamster Specification Brief and Demonstration/Prototype Brief, or the information set forth on those documents, as well as a video documenting Hammy's movements and sounds. Mr. Maurer, in turn, documented this meeting – and Hasbro's interest in both of these concepts – by filling out an Inventor Review Record and rating the toys as a "1 – Hold/Send In," a true and correct copy of this Inventor Review Record is attached hereto as **Exhibit 2**. This Inventor Review Record further indicated that the "Inventor acknowledges and agrees that all submissions described hereon are covered by the disclosure previously signed by the Inventor."

18. In late 2009, at the Dallas Toy Fair, Mr. Heller became aware that a company called Cepia, L.L.C. ("Cepia") was marketing a product called "Zhu Zhu Pets," and accessories for this toy, which not only appeared to embody his idea for a robotic toy hamster, covered in plush, but also contained nearly all of the features, functionalities, and accessories described in the Toy Hamster Specification Brief, Demonstration/Prototype Brief, and other documentation that was disclosed to these modeling/toy houses/toy companies in 2008 under the relevant MNDAs. During the course of an investigation into Cepia, A-Tech/The Bean, and Ying Leung's activities in the months that followed, Mr. Heller obtained information suggesting that Cepia and Hasbro had been involved in negotiations concerning the Zhu Zhu Pet product line, and that Hasbro had, in fact, visited A-Tech/The Bean's facilities on numerous occasions during the development of Mr. Heller's robotic toy hamster.

19. On February 10, 2010, mere days before the New York Toy Fair, Darlene Horan, an Inventor Liason at Hasbro, sent a box containing Mr. Heller's PC Plug 'N Play materials and cover letter to Mr. Heller, stating "[p]ursuant to Mr. Maurer's direction, I'm returning your materials on PC Plug 'N Play. Please call with any questions." A true and correct copy of this letter is attached hereto as **Exhibit 3**. Hasbro did not return any of the materials it had related to the robotic toy hamster to Mr. Heller. From February 14 to 17, 2010, Mr. Heller attended the

New York Toy Fair. During this Toy Fair, Mr. Heller discovered that Hasbro was coming out with a line of robotic toys that were very "hamster-like" in appearance, and appeared to contain many of the same features as his robotic toy hamster. Videos of Hasbro's demonstration of this new line of toys – called "Furry Frenzies" – was viewable on You Tube.

20.     On March 31, 2010, in response to Hasbro's apparent misuse/misappropriation of Mr. Heller's Confidential Information, Mr. Heller caused a letter to be transmitted to Mike Hirtle, David Maurer, and Darlene Horan at Hasbro, asking them to print out hard copies of all Confidential Information Mr. Heller had disclosed to Hasbro with respect to Hammy and return it to his counsel, to download all electronically stored information related to Hammy onto a USB device and ship it to counsel for Mr. Heller, and to produce copies of Hasbro's internal communications concerning Hammy to Mr. Heller to allow him to determine if Hasbro had, in fact, implemented his ideas during the design and development of Furry Frenzies. Mr. Heller also requested a list of all persons and entities that were given access to Mr. Heller's Confidential Information during the course of the parties' relationship, and that Hasbro provide information about the design and development of its new line of robotic toys. Mr. Heller indicated that any information disclosed to him would be kept confidential, and that he was also willing to enter into a separate Confidentiality Agreement, if necessary, with respect to any documentation so provided. Hasbro did not respond to Mr. Heller's March 31, 2010 letter, did not comply with any of his requests, and failed to provide any responsive information.

21.     On May 10, 2010, Mr. Heller caused a second letter to be transmitted to Mike Hirtle, David Maurer, and Darlene Horan at Hasbro, attaching proof that these letters were, in fact, delivered to Hasbro's facilities, pointing out that Hasbro had not responded to the serious concerns set forth in the letter, had not returned any of Mr. Heller's Confidential Information, and had not responded to his request for information as to the design and development of Hasbro's new line of robotic toys. Shortly thereafter, Hasbro responded to Mr. Heller's follow up letter stating, falsely, that it did not have any documents or Confidential Information regarding Mr. Heller's robotic toy hamster, and requesting "proof" that Mr. Heller had, in fact,

disclosed Confidential Information to Hasbro. Mr. Heller supplied Hasbro's own Inventor Review Record (see **Exhibit 2**) – which Hasbro should have had in its own files – and he also supplied a copy of a follow up e-mail sent by Mr. Heller to Mr. Maurer transmitting video footage of the operation of the robotic toy hamster and other e-mails concerning the Hammy project, which Hasbro also should have had in its own files.

22. After supplying this "proof" to Hasbro, Mr. Heller reminded Hasbro that, under the terms of the Agreement to Hold Confidential, "[e]ach submission shall be deemed an offer to license the Amusement comprehended by the submission," and that Hasbro had also promised not to "[u]se [the] Information for Commercial Purposes without the consent of the disclosing party," here, Mr. Heller. Mr. Heller further pointed out that, under the Agreement to Hold Confidential, Hasbro's promise was to last "two years from the date of the initial disclosure," and that, therefore, Hasbro's promise not to use Mr. Heller' Confidential Information was still in force. Mr. Heller requested that Hasbro indicate by May 28, 2010, whether it wished to enter into licensing discussions with Mr. Heller with respect to this new line of robotic toys.

23. On June 2, 2010, in response to a voicemail left by Hasbro, counsel for Mr. Heller contacted Hasbro to determine if they were, at long last, interested in entering into licensing discussions. During this phone call, Hasbro indicated that it did not wish to enter into licensing discussions with Mr. Heller because Hasbro had not yet determined if they would be selling Furry Frenzies (even though they were demonstrating the product at the Toy Fair and it would be reasonable to assume they would be), the Furry Frenzies "were not hamsters" (even though the appeared to be hamsters and, at any rate, possessed many of the same features and functionalities of Mr. Heller's robotic toy hamster), and that since Cepia LLC's Zhu Zhu Pets were now "generally known" to the public, Mr. Heller's Confidential Information was no longer protectable (even though the Agreement to Hold Confidential expressly provides that Hasbro's "conscious consideration" of Mr. Heller's Confidential Information (which Hasbro clearly did, as evidenced by the Inventor Review Record), coupled with deliberate implementation of the

JASON G. HELLER'S COMPLAINT AGAINST HASBRO, INC.

Confidential Information (which Hasbro refused to confirm or deny in response to Mr. Heller's reasonable requests) would still constitute a breach of the Agreement to Hold Confidential).

24. Shortly thereafter, on or around August of 2010, Mr. Heller discovered that Hasbro was, in fact, selling numerous variations of Furry Frenzies: Flurry in a Hurry, a "swift bunny," Tizzy Tumbles, a "shy and sweet" bunny, Zippy "Zip" McNutty, a "hyperactive chipmunk," Captain Crash, "the sneaky raccoon," Seniorita Scamps, "the pretty kitty," Rascal Rally, a "tough alley cat," Buster Bow Wow, "the goofy puppy," Bumper McBones, a curious puppy, and Dash McFlash, "the speedy hedgehog." Even a cursory examination of these toys reveals that all of them are, like Mr. Heller's toy, self-contained robotic toy animals with plastic undercarriages and plush exteriors that react to a touch sensor on the back and have accompanying sounds and movements. All Hasbro has done is add different ears and tails to the undercarriage, along with tufts of fake fur, a bit of striping or coloring, and some specialized "sounds" depending on which kind of animal the toy is supposed to represent. To borrow from a popular expression, Hasbro is simply "putting lipstick on robotic toy hamsters" and trying to convince everyone they are actually bunnies, chipmunks, raccoons, kitties, puppies, or hedgehogs, as the case may be; Hasbro has not and cannot change the fundamental nature of these toys, which embody many of the ideas Mr. Heller disclosed to Hasbro in November of 2008 under the Agreement to Hold Confidential. Hasbro is also selling accessories that are substantially similar to accessories Mr. Heller disclosed to Hasbro in November of 2008: a Scoot & Scurry City containing "sloping ramps," a "Cruisin Carrier" to carry these robotic toy animals, and a Whirl Around Playground with a hamster wheel.

25. Upon information and belief, Hasbro has reaped hundreds of thousands of dollars from the sale of Furry Frenzies and accessories for this toy over the past six months; several attempts to purchase these toys and accessories for these toys in Los Angeles area stores were unsuccessful because the stores were "sold out." Although it is clear that Hasbro should have simply paid Mr. Heller a reasonable royalty to use the ideas he disclosed to Hasbro in November of 2008, Hasbro has unjustly refused to honor its promises and willfully misappropriated Mr.

JASON G. HELLER'S COMPLAINT AGAINST HASBRO, INC.

Heller's ideas as its own, thus forcing Mr. Heller to file a lawsuit to obtain fair compensation for the fruits of his creativity, and to punish Hasbro for its willful, malicious, and wrongful acts. Accordingly, Mr. Heller brings the following causes of action against Hasbro, and prays that the Court, or a jury of Mr. Heller's peers, grants him the requested relief, forthwith.

## FIRST CAUSE OF ACTION

### (Breach of Written Contract)

26. Mr. Heller incorporates and realleges paragraphs 1 through 25 as though fully set forth herein.

27. On September 17, 2008, Mr. Heller, a sole proprietor doing business as "Floating Lightbulb Toys," entered into a written agreement entitled "Agreement to Hold Confidential" with Hasbro, Inc. A true and correct copy of this Agreement to Hold Confidential is attached hereto as **Exhibit 1**.

28. Mr. Heller has performed all conditions, covenants, and promises required to be performed by him under the Agreement to Hold Confidential, except to the extent that such performance was prevented or excused from performing.

29. Upon information and belief, Defendant Hasbro has breached the terms of this written agreement by using Mr. Heller's Information for Commercial Purposes, in violation of paragraph 4 of the Agreement to Hold Confidential.

30. As a direct and proximate cause of Defendants' breaches of the Agreement to Hold Confidential, Mr. Heller has suffered, and continues to suffer, damages in an amount to be proven at trial, but, upon information and belief, in an amount that exceeds the jurisdictional minimum of this Court.

## SECOND CAUSE OF ACTION

### (Breach of Confidence)

31. Mr. Heller incorporates and realleges paragraphs 1 through 30 as though fully set forth herein.

32. Mr. Heller offered ideas to Defendant Hasbro related to a toy robotic hamster and accessories for this toy, and ideas related to the development of prototypes for the robotic toy hamster and accessories for this toy, in documents, e-mails, telephone conversations, and in face-to-face meetings.

33. Defendant Hasbro received these ideas related to a toy robotic hamster and accessories for this toy, and ideas related to the development of prototypes for the robotic toy hamster and accessories for this toy, in confidence and was under a duty to keep them confidential and not use or disclose them without Mr. Heller's permission.

34. Upon information and belief, Defendant disclosed Mr. Heller's ideas related to a toy robotic hamster and accessories for this toy, and ideas related to the development of prototypes for the robotic toy hamster and accessories for this toy, to a third party or parties involved in the design, manufacture, or distribution of these toys, and used Mr. Heller's ideas, without his permission.

35. As a direct and proximate cause of Defendant's breach of confidence, Mr. Heller has suffered, and continues to suffer, damages in an amount to be proven at trial, but, upon information and belief, in an amount that exceeds the jurisdictional minimum of this Court.

### THIRD CAUSE OF ACTION

### (Trade Secret Misappropriation)

36. Mr. Heller incorporates and realleges paragraphs 1 through 35 as though fully set forth herein.

37. From April of 2008 to November 2008, Mr. Heller conceived of and developed an idea for a robotic toy hamster, the marketing rationale for this robotic toy hamster, the features, functionalities, and accessories for this robotic toy hamster, and a unique combination of features, functionalities, and accessories for this robotic toy hamster, all of which were documented by Mr. Heller in a Toy Hamster Specification Brief, in a Demonstration/Prototype Brief, and in videos, all of which derived potential

JASON G. HELLER'S COMPLAINT AGAINST HASBRO, INC.

and actual economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure and use, all of which were the subject of efforts that are reasonable under the circumstances to maintain their secrecy, and all of which constitute Mr. Heller's protectable trade secrets.

38. Mr. Heller subsequently disclosed his trade secrets to Defendant Hasbro in e-mails, telephone calls, and face-to-face meetings, and Hasbro subsequently misappropriated Mr. Heller's trade secrets by using the trade secrets reflected in the Toy Hamster Specification Brief, the Demonstration/Prototype Brief, and in videos, knowing, or having reason to know, they were acquired by improper means and obtained through the violation of non-disclosure obligations owed to Mr. Heller.

39. As a direct and proximate cause of Defendant's acts of misappropriation, Mr. Heller has suffered, and continues to suffer, damages in an amount to be proven at trial, but, upon information and belief, in an amount that exceeds the jurisdictional minimum of this Court.

40. Upon information and belief, Defendant's misappropriation was willful and malicious. Exemplary damages should be imposed against Hasbro.

## FOURTH CAUSE OF ACTION

### (Common Law Misappropriation)

41. Mr. Heller incorporates and realleges paragraphs 1 through 41 as though fully set forth herein.

42. Mr. Heller has made a substantial investment of time, effort and money into creating and developing non-trade secret confidential and proprietary business information used in the development and creation of two prototypes of a robotic toy hamster, and accessories for these prototypes, such that Mr. Heller has a property right in this non-trade secret confidential and proprietary business information.

43. Upon information and belief, from viewing and studying these prototypes, and the accessories for these prototypes, Defendant was able to and did misappropriate the idea for a

JASON G. HELLER'S COMPLAINT AGAINST HASBRO, INC.

robotic toy hamster and accessories for this toy at little or no cost and have thus reaped where it has not sown.

44. As a direct and proximate cause of Defendant's acts of misappropriation, Mr. Heller has suffered, and continues to suffer, damages in an amount to be proven at trial, but, upon information and belief, in an amount that exceeds the jurisdictional minimum of this Court.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

45. Mr. Heller incorporates and realleges paragraphs 1 through 44 as though fully set forth herein.

46. Defendant obtained a benefit from the unauthorized disclosure of Mr. Heller's ideas for a robotic toy hamster, covered in plush, that runs on a makeshift tread wheel or moves around in a plastic ball, utilizing, a small speaker, voice chip, and memory that would allow to the robotic toy hamster to make eating, drinking, and panting noises as well as happy squeaks, a touch sensor on the back of the hamster with accompanying sound and movements, and a mechanism for sensing and differentiating between various locations in a cage.

47. Defendant has unjustly retained the benefit of Mr. Heller's ideas for a robotic toy hamster, covered in plush, that runs on a makeshift tread wheel or moves around in a plastic ball, utilizing, a small speaker, voice chip, and memory that would allow to the robotic toy hamster to make eating, drinking, and panting noises as well as happy squeaks, a touch sensor on the back of the hamster with accompanying sound and movements, and a mechanism for sensing and differentiating between various locations in a cage.

48. Mr. Heller was harmed by Defendant's actions and has been damaged in an amount to be proven at trial, but, upon information and belief, in an amount that exceeds the jurisdictional minimum of this Court.

///

///

JASON G. HELLER'S COMPLAINT AGAINST HASBRO, INC.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

(i) a finding that Hasbro has used Mr. Heller's Information for Commercial Purposes without the consent of Mr. Heller, in violation of paragraph 4 of the Agreement to Hold Confidential,

(ii) a finding that Hasbro has willfully and maliciously misappropriated Mr. Heller's ideas related to a robotic toy hamster and accessories for this toy and that Hasbro's Furry Frenzies product line is substantially derived from Mr. Heller's trade secrets or non-trade secret confidential and proprietary business information;

(iii) disgorgement of any and all profits made by Hasbro from the sale of Furry Frenzies and accessories for this toy from August 2010 to the date of judgment, plus pre-judgment interest, which, on the date of filing, are, upon information and belief, believed to be at least $500,000;

(iv) compensatory and consequential damages to Mr. Heller as appropriate, plus pre-judgment interest and costs;

(v) exemplary damages under California Civil Code Section 3426.3(c) for Hasbro's willful and malicious misappropriation of Mr. Heller's trade secrets;

(vi) a reasonable royalty for all sales of Furry Frenzies and accessories for this toy made after the date judgment is entered;

(vii) Mr. Heller's attorneys' fees, expenses, and court costs; and

///

///

///

///

JASON G. HELLER'S COMPLAINT AGAINST HASBRO, INC.

(viii) Such other and further relief as is just and proper.

Dated: March 29, 2011

THE LAW OFFICE OF ROBERT C. MATZ LLP

By: _____
Robert C. Matz
Attorney for Plaintiff Jason G. Heller

**DEMAND FOR JURY TRIAL**

Plaintiff Jason Heller hereby demands a jury trial on all causes of action and issues so triable.

March 29, 2011

THE LAW OFFICE OF ROBERT C. MATZ LLP

By: _____
Robert C. Matz
Attorney for Plaintiff Jason G. Heller